UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHERON B. DAVIDSON,                                                          Case No.:

                      Plaintiff,                                             **COMPLAINT**

                -against-                                              **DEMAND FOR**
                                                                             **JURY TRIAL**

GARDA WORLD SECURITY CORPORATION,
d/b/a GARDA WORLD CASH SERVICES

                    Defendants.

-----------------------------------------------------------------X

Sheron B. Davidson, by and through her attorneys, Law Office of Julio E. Portilla, P.C., alleges upon information and belief, and as against Garda World Security Corporation d/b/a Garda World Cash Services (the "Defendant" or "Garda"), as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff brings this action to recover (1) unpaid wages, (2) overtime compensation, (3) civil penalties pursuant to the Wage Theft Prevention Act, (4) liquidated damages, (5) prejudgment and post-judgment interest, and (6) costs, penalties, interest, injunctive relief, (7) and reasonable attorneys' fees pursuant to New York Labor Law §§§190, 195, 217 et seq., and the Fair Labor Standards Act (the "FLSA") §§ 201 et. seq and 29 U.S.C. § 1166(a)(4)(A).

## PARTIES

2. Plaintiff Davidson is a former employee of Defendant Garda World Security Corporation d/b/a Garda World Cash Services ("Garda"). At all times herein mentioned, and at the time of the commencement of this action, plaintiff, Sheron Davidson, ("Plaintiff") was a resident of the County of Kings, City and State of New York.

3. At all times herein mentioned, defendant, Garda World Security Corporation was founded in 1995 and is headquartered in Montreal, Canada. Garda World Security Corporation d/b/a Garda World Cash Services has a place of business in New York known as 5-26 45th Avenue, Long Island City, NY 11101.

4. Defendant Garda World Security Corporation d/b/a Garda World Cash Services. by virtue of its management and control over the wages and work of Employees, is an "employer" under applicable labor law.

5. Defendant Garda acted as an employer pursuant to New York Labor Law §2 and the regulations thereunder.

6. Defendant Garda exercised control over the terms and conditions of Plaintiff's employment in that Garda had the power and authority to: (i) hire and fire employees, (ii) determine rates and method of pay, (iii) determine the work schedules and hours worked, (iv) supervise and control the work of employees, and (v) otherwise affected the quality of the employees' employment. As such, Defendant Garda liable for any wages due to Plaintiff.

## BACKGROUND

7. On or about 2007, Garda World Security Corporation acquired ATI Systems International ("ATI"), a U.S. firm specializing in cash handling operations and physical security. ATI has roughly 7,000 employees, and provides cash handling in thirty-five (35) states, as well

as physical security in a number of locations across the U.S. ATI would then purchase CDC Systems, a top cash handling company in the New York metro area. The acquisition included AT Systems Security, a TSA contractor with approximately 1,000 employees. AT Systems Security provides security screening services for the TSA and sees roughly $30 million (U.S.) in annual revenues.

8. Plaintiff Sheron Davidson ("Davidson" or "Plaintiff") originated as a CDC Systems and ATI Systems employee until the acquisition by Garda World Security Corporation ("Garda"). As such, Plaintiff has been associated with Garda and its related entities since on or about September 1997 and continued working there until June 2014.

9. Defendant Garda provides business solutions and security services worldwide. The company operates in two segments, Cash Services and Protective Services. The Cash Services segment's is the focus of this complaint and includes a combination of armored transportation services, cargo aircraft, deposit processing systems, cash vault services, in-store cash control systems, and check imaging, as well as ATM services. This segment's platform comprises approximately 285 branches, 3,500 armored and other vehicles, and 157 cargo aircraft serving various customers. The Protective Services segment offers a range of integrated services to the public and private sector customers in various industries, including security officers to protect the people and assets of clients in various sectors, such as health care, governments, telecommunications, oil and gas sites, retail, property management, special events, and transportation. This segment's services also include airport pre-board security screening in 27 airports across Canada, as well as asset protection, security, crisis management, and patrol response; and market entry strategy, project risk assessment, contingency planning, close protection, crisis response, and risk analysis services. The company offers its services across a

range of sectors, including financial services, infrastructure, natural resources, and retail, as well as on behalf of Fortune 500 companies, governments, NGOs, and humanitarian relief organizations. It has operations in Canada, the United States, Europe, Africa, Asia, and the Middle East.

10. In September 1997, Plaintiff worked the night shift (10:00 PM until 6:00 AM) processing currency until she was transferred to the "Order Entry Department". After three (3) years, Plaintiff was then transferred to the "Inventory Control Department". Eventually, the "Order Entry Department" and the "Inventory Control Department" merged and Plaintiff was promoted to supervisor.

11. As a supervisor, Plaintiff was in charge of three (3) employees and was responsible for keeping track of all the bank inventories to the vault, coin-room and processing.

12. During the course of Davidson's employment, Plaintiff typically worked over forty (40) hours per week. In fact, Davidson typically worked Sunday through Friday, from 6:00AM to 8:00PM, and often on weekends thereby working at least sixty-five (65) hours per week. Prior to being terminated, Davidson earned $19.00 per hour or on the average about $1900 every two (2) weeks.

13. Plaintiff's direct supervisor was Julio Duffoo until he resigned in February 2014 thereafter the Plaintiff's direct supervisor was Joe D'Amico. D'Amico was supervised by Robert Meyers. Upon information and belief, D'Amico complained to Meyers that Plaintiff was earning too much money.

14. Prior to Plaintiff's termination, she was spoken to in an unprofessional manner and treated disrespectful by her superiors. In fact, D'Amico treated Plaintiff in a hostile and disrespectful manner compared to other employees.

15. On or about June 2014, Plaintiff was informed by Meyers that she was being terminated. At the time, the Plaintiff accrued two (2) weeks' vacation and was told that said vacation would be paid on the next payment cycle. These payments were never tendered to Plaintiff. Moreover, Defendant failed to provide written notice to Plaintiff of "the exact date of her termination as well as the exact date of the cancellation of employee benefits connected with such termination.

16. Since 1989, New York law has required employers to provide written notice to employees whose employment has been terminated. Historically, this requirement has often been ignored by employers, to little or no consequences. However, recently, the New York Department of Labor has been assessing monetary fines on unsuspecting employers that fail to comply with this particular notice requirement.

17. Pursuant to New York Labor Law § 195(6), employers are required to provide written notice to any employee terminated from employment with "the exact date of such termination as well as the exact date of the cancellation of employee benefits connected with such termination." This written notice must be provided within five working days after the employment relationship has ended. This notice requirement applies not only to those employees whose employment is terminated by the employer, but also to those employees who leave the employer because they resign, quit, retire or are laid off.

18. If an employer fails to provide the notice required under New York Labor Law § 195(d), the employer can be subject to civil fines of up to $5,000 per employee. In addition, aggrieved individuals can bring civil actions against employers that fail to provide the required notice.

19. Upon being terminated, Garda failed to provide the required notice required under

New York Labor Law § 195(6).

20. Furthermore, Defendants Garda failed to compensate Plaintiff for time worked in excess of forty (40) hours per week at a rate of at least one and one half (1 and 1/2) times her regular hourly rate, throughout the entire term of her employment with Defendant.

21. Defendant Garda knowingly and willfully failed to pay Plaintiff overtime premiums in direct violation of the New York Labor Law.

22. Defendant Garda directly supervised Plaintiff's work performance throughout her employment, determined the hours Plaintiff was required to work, and set Plaintiff's compensation.

23. At all relevant times, including during the course of Plaintiff's employment, Defendant willfully disregarded and purposefully evaded record keeping requirements of the NYLL by failing to maintain accurate time sheets and payroll records.

## AS AND FOR THE FIRST CAUSE OF ACTION FOR VIOLATION OF NEW YORK LABOR LAW § 190 ET. SEQ. FOR FAILURE TO PAY OVERTIME

24. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-23 of the above as if fully set forth herein.

25. Defendant's willful failure to compensate Plaintiff for time worked in excess of forty (40) hours per week at a rate of at least one and one-halftime her regular hourly rate, throughout the entire term of Plaintiff's employment with the Defendant was a violation of the requirements of N.Y. Lab. Law § 190, et seq.

26. Defendants failed to pay Plaintiff overtime premiums for her work in excess of forty (40) hours per week, as required in violation of New York Labor Law§§ 190 *et seq.* and 650 *et seq.* and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-

2.2.

27. Defendants' failure to play Plaintiff to pay overtime pay was willful and/or in bad faith.

28. Plaintiff is entitled to an award of damages for overtime pay for work over forty (40) hours per week in an amount equal to the proper overtime premiums she should have been paid; plus liquidated damages, attorneys' fees, and costs in amounts to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION FOR VIOLATION OF NEW YORK LABOR LAW, SPREAD OF HOURS PAY N.Y. LABOR LAW §§ 190 *et seq* AND *et seq.* 650 *et seq.; 12 N.Y.C.R.R.§ 142-2.4*

29. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-28 of the above as if fully set forth herein.

30. Defendants failed to pay Plaintiff's one extra hour's pay for every day in which the interval between the beginning and end of Plaintiff's work day exceeded ten hours, in violation of N.Y.C.R.R. § 142-2.4, in violation of N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* and New York State Department of Labor Regulations, 12 N.Y.C.R.R. § 142-2.4.

31. Defendants' failure to pay Plaintiff spread of hours was willful and/or in bad faith

32. Plaintiff is entitled to an award of an extra hour's pay for every day that Plaintiff worked in excess often hours, liquidated damages, attorneys' fees, and costs in amounts to be determined at trial

### AS AND FOR A THIRD CAUSE OF ACTION FOR VIOLATION OF NEW YORK LABOR LAW § 195

33. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-32 of the above as if fully set forth herein.

34. Defendant Garda terminated Plaintiff.

35. Defendant Garda failed to notify Plaintiff in writing of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination within five (5) of such termination.

36. Plaintiff's seeks reimbursement of medical expenses, attorney's fees, interest and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR VIOLATION OF NEW YORK LABOR LAW § 217

37. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-36 of the above as if fully set forth herein.

38. Defendant Garda terminated Plaintiff.

39. Defendant Garda failed to notify Plaintiff in writing of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination within five (5) of such termination.

40. Plaintiff's seeks reimbursement of medical expenses, attorney's fees, interest and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR VIOLATION OF COBRA PURSUANT TO 29 U.S.C. § 1166(a)(4)(A)

41. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-40 of the

above as if fully set forth herein.

42. Defendant Garda failed to provide Plaintiff with notice of her COBRA rights in violation of 29 U.S.C. § 1166(a)(4)(A).

43. Plaintiff seeks reimbursement of medical expenses, $110 a day from the date defendant Garda failed to provide notice until the day judgment is entered in this action, including attorney's fees, costs, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief against Defendants jointly and severally:

(a) Unpaid overtime wages due under New York Labor Law;

(b) Declaring that Defendant Garda violated Plaintiff's COBRA rights;

(c) Declaring that Defendant Garda violated the New York State Labor Law;

(d) Liquidated damages pursuant to New York Labor Law;

(e) Civil penalties pursuant to the New York State Wage Theft Prevention Act;

(f) An award of damages in an amount to be determined at trial, for any and all economic and/or compensatory damages, punitive damages, monetary damages and/or non-monetary losses suffered by Plaintiff plus prejudgment interest, liquidated damages, costs, and attorney's fees; and

(g) All such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

(h) Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which they have a right to jury trial

Dated: January 31, 2016
    New York, NY

                                            Respectfully submitted,

                                            Law Office of Julio E. Portilla, P.C.
                                            on behalf of Sheron B. Davidosn

                    By: _____
                                            Julio E. Portilla, Esq.
                                            111 Broadway, Suite 706
                                            New York, NY 10006
                                            (212) 365-0292
                                            jp@julioportillaw.com